NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

ETC INTERNATIONAL, INC.,

Plaintiff,

v.

CURRICULUM ADVANTAGE, INC.; COMPUTERS & CONTROLS, LTD.; and PETER GILLETTE; jointly, severally, and individually,

Defendants.

Civil Action No. 03-CV-5898 (JLL)

**OPINION**

**LINARES**, District Judge.

This matter comes before the Court on the objections of Plaintiff ETC International, Inc. ("ETC" or "Plaintiff") to the June 29, 2005 Report and Recommendation ("June 29 Report and Recommendation") of United States Magistrate Judge Ronald J. Hedges regarding Defendant Curriculum Advantage, Inc.'s ("Curriculum" or "Defendant") motion to dismiss the First Count of the Complaint pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, on Defendant's motion for summary judgment on Count Ten of the Complaint and on its Counterclaim, and on Plaintiff's cross-motion for summary judgment on Count Ten. The Court has considered the submissions of the parties. These motions are resolved without oral argument. Fed. R. Civ. P. 78. For the reasons set forth below, the Court adopts the June 29 Report and Recommendation dismissing Count One of the Complaint, grants Defendant's motion for summary judgment with respect to Count Ten, grants Defendant's motion for summary judgment on its Counterclaim, and

denies Plaintiff's cross-motion for summary judgment on Count Ten.

## JURISDICTION

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 since complete diversity of citizenship between the parties exists and the matter in controversy exceeds $75,000, exclusive of interest and costs.

## BACKGROUND

### A. Factual Background[1]

Plaintiff is a New Jersey corporation, founded in 1991, which offers software and training services to school districts, including those in the Caribbean. Mary Markowsky ("Markowsky") is the founder and Chief Executive Officer of ETC. Defendant is a corporation with its principal place of business in Georgia.

Plaintiff entered into a contract dated September 8, 2000 and executed in April, 2000 (the "April 2000 Contract" or the "Contract") with Havas Interactive, Inc. ("Havas"), for the purchase and resale of educational software titled "Classworks."[2] The April 2000 Contract provided for the purchase by ETC of Classworks software bundles and resale of such software to third parties. The Contract also placed geographical restrictions on ETC's right to re-sell such software. The April 2000 Contract limited ETC's resale rights to include only the educational markets of Bermuda, the Bahamas and other Caribbean nations. (April 2000 Contract, Frost Certification, Ex. C). The contract also stated that "[t]his letter ... when executed by both of our companies will

---

[1]The following facts are undisputed unless noted otherwise.

[2]Defendant eventually acquired the publishing rights to the Classworks software.

constitute a *non-exclusive agreement*."[3] (Id.).

Between the years 2000 and 2003, the April 2000 Contract was amended several times to replace references to Havas with the names of other, substituted parties.[4] The final amendment to the April 2000 Contract, dated February 27, 2003, assigned the contract to Defendant Curriculum (the "February 2003 Assignment"). The February 2003 Assignment provided that "[e]xcept as specifically amended herein, the Agreement shall continue in full force and effect." (February 2003 Assignment, Frost Certification Ex. C). Thus, ETC became contractually able to purchase Classworks from Defendant and re-sell the software to third parties in accordance with the terms of the original contract. The agreement between Plaintiff and Defendant automatically renewed December 31 of each year, for a term of one year, as provided in the "Independent Contractor Amendment" dated July 8, 2002. (Frost Certification, Ex. C).

Plaintiff alleges that the April 2000 Contract[5] bestowed it with exclusive rights to sell Classworks software in the Caribbean and that Defendant's direct sale of such software to a third party, Computers & Controls ("C&C"), breached the Contract.[6] Defendant does not dispute that

---

[3]The Court notes that there is no further language regarding exclusivity in any amendment to the April 2000 Contract leading up to, and including, the assignment made in February, 2003.

[4]From the text of the original contract, and subsequent amendments, it appears to the Court that the original contracting parties were ETC and Havas Interactive, Inc., then ETC and Curriculum Advantage (*not* the present Defendant), then ETC and Classwell Learning Group, Inc., and finally Plaintiff and Defendant.

[5]For the purposes of clarity, the Court will refer to the contract which was assigned to Defendant on February 27, 2003, as the "April 2000 Contract." Any relevant amendments or changes to the contract between April, 2000 and February, 2003 will be noted as the Court deems them relevant to its analysis.

[6]From ETC's submissions to the Court, it appears that ETC's role in the transaction was as the "middle-man." Typically, a Caribbean school district would place an order for software

it sold products to C&C, but asserts that it was free to do so because the Contract contained no exclusivity provision.

**B. Procedural History**

On December 11, 2003, Plaintiff filed its Complaint in this matter. On July 9, 2004, Curriculum moved to dismiss Counts One through Nine, Eleven, and Twelve of the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and for failure to plead with particularity pursuant to Federal Rule of Civil Procedure 9(b) with respect to Count One. Curriculum also moved with respect to Count Ten for Plaintiff to plead a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). This Court granted Defendant's motion to dismiss but granted Plaintiff leave to amend the Complaint as to Count One. This Court denied Defendant's motion with respect to Count Ten. Defendant filed an Answer and Counterclaim on April 20, 2004. Defendant's Counterclaim contains four counts relating to an alleged May 15, 2003 sale of educational products to Plaintiff pursuant to the April 2000 Contract. Defendant's Counterclaim alleges that it timely issued Plaintiff an invoice for $125,000, the cost of products ordered and delivered, and that Plaintiff has not yet paid Defendant this amount.[7]

---

with C&C, who would then order the licenses from ETC. ETC would then order the licenses from Curriculum. Upon receipt of the licenses, ETC would then sell the licenses to C&C and use funds received from C&C to pay Curriculum. Plaintiff's civil action relates to Defendant's sale of software *directly* to C&C, which allegedly eliminated the need for Plaintiff's function as a "middle-man."

[7]The Court notes that there is no reflection on the docket that Plaintiff ever filed an Answer to Defendant's Counterclaim.

On February 15, 2005, Plaintiff filed an Amended Complaint[8] with the Court. On February 28, 2005 Defendant moved to dismiss Count One of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for Plaintiff's second failure to meet the requirements of Federal Rule of Civil Procedure 9(b). This court referred Defendant's motion to dismiss to the Honorable Magistrate Judge Ronald J. Hedges. By way of Report and Recommendation filed June 29, 2005, Judge Hedges recommended that Count One be dismissed. Plaintiff filed objections to the Report and Recommendation on July 27, 2005 with the consent of the Court. Defendant filed opposition to Plaintiff's objections, but filed no objection of its own. Defendant filed a motion for summary judgment on Count Ten of the Complaint and its Counterclaim on November 17, 2005. Plaintiff filed a cross-motion for summary judgment on December 5, 2005.

It appears to the Court that the only claims presently pending are Counts One and Ten of the Plaintiff's Complaint and Counts One through Four of Defendant's Counterclaim.

## DISCUSSION

### A. Objection to the Report and Recommendation

#### 1. Standard of Review

When a magistrate judge addresses motions that are considered "dispositive," such as to grant or deny a motion to dismiss, a magistrate judge will submit a Report and Recommendation to the district court. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72; L. Civ. R. 72.1(a)(2). The district court may then "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate [magistrate judge]. The judge may also receive further

---

[8]For the sake of clarity, the Court notes that any reference to the "Complaint," infra, shall refer to Plaintiff's Amended Complaint.

evidence or recommit the matter to the magistrate [magistrate judge] with instructions." 28 U.S.C. § 636(b)(1)(C); see also L. Civ. R. 72.1(c)(2). Unlike an Opinion and Order issued by a magistrate judge, a Report and Recommendation does not have force of law unless and until the district court enters an order accepting or rejecting it. United Steelworkers of Am. v. N. J. Zinc Co., Inc., 828 F.2d 1001, 1005 (3d Cir. 1987).

The standard of review of a magistrate judge's determination depends upon whether the motion is dispositive or non-dispositive. With respect to dispositive motions, the district court must make a de novo determination of those portions of the magistrate judge's Report to which a litigant has filed an objection. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(2); see also State Farm Indem. v. Fornaro, 227 F. Supp. 2d 229, 231 (D.N.J. 2002); Zinberg v. Washington Bancorp, Inc., 138 F.R.D. 397, 401 (D.N.J. 1990) (concluding that the court makes a de novo review of the parts of the report to which the parties object). Here, Plaintiff objects to Magistrate Judge Hedges' recommendation granting Defendant's second motion to dismiss Count One for failure to comply with the requirements of Federal Rule of Civil Procedure 9(b). Therefore, this Court will examine the present motion under a de novo standard of review. In conducting this review, the Court "owes no deference to the Magistrate Judge's findings and conclusions." Taberer v. Armstrong World Indus., Inc., 954 F.2d 888, 904 (3d Cir. 1992).

**2. Failure to Plead with Particularity**

Count One of the Complaint alleges common law fraud against Defendant. Plaintiff asserts that such claim is set forth in paragraphs 129 through 134 of the Complaint. (Pl. Br. Opp'n Mot. to Dismiss at 8). In relevant part, these paragraphs allege the following:



Paragraph 130: Based upon the exclusive agreement with Defendant Curriculum, the Plaintiff embarked upon significant efforts to market and sell the defendant's products in Trinidad.

Paragraph 131: As described above, the plaintiff was in the process of obtaining a major sale, which required the utilization of a local company.

Paragraph 132: Pursuant to the local agreement between ETC and Curriculum, the product was to be sold by ETC to the contracting governmental entity. There was to be no direct contact between [Curriculum] and the local contractor.

Paragraph 133: On or after January 2003, in Tenafly, New Jersey, and other locations, defendant Curriculum through Cook and Glover, *fraudulently induced the plaintiff to enter into negotiations for a new exclusive contract, on the false promise that plaintiff would continue to be Curriculum's exclusive representative in the Caribbean and would receive commissions for any and all sales* initiated, or made, as a result of [Markowsky's] or [ETC's] efforts on behalf of Curriculum.

Paragraph 134: ETC continued its sales efforts on behalf of Curriculum, based on its belief that Curriculum was acting in good faith. Unfortunately, this reliance upon Curriculum's good faith was misplaced.

Paragraph 135: Curriculum and Gillette engaged in surreptitious contact without disclosing the existence, nature or purpose of those conversations. Such negotiations were hidden from ETC and/or Dr. Markowsky.

(Compl. ¶¶ 129-135) (emphasis added).

From the face of the Complaint, it appears to the Court that Plaintiff alleges that Defendant fraudulently induced Plaintiff into continuing to market and sell Defendant's products by the promise of a future contract between the parties. (Pl. Br. Obj. at 8). Plaintiff alleges in the Complaint that Plaintiff and Defendant had agreed upon terms for a new, exclusive contract between the parties. (Compl. ¶¶ 46-50). Plaintiff's principal allegedly signed the agreement in August, 2003 and forwarded it for Defendant's signature, which was never obtained. (Compl. ¶¶ 46-50). Despite the latter contract never having been executed, Plaintiff apparently argues that it

relied upon Defendant's alleged assurances of Plaintiff's satisfactory performance and continued to market Classworks to its detriment. Plaintiff alleges that Curriculum and C&C's ensuing direct business relationship caused financial harm to Plaintiff since C&C ultimately refused to pay ETC for the licenses. (Compl. ¶ 141).

By Report and Recommendation dated December 28, 2004 and subsequent adoption of that Report and Recommendation by this Court, Count One of the Complaint was dismissed for failure to plead with particularity pursuant to Federal Rule of Civil Procedure 9(b). Plaintiff, however, was granted leave to amend Count One. Plaintiff filed an Amended Complaint and Defendant moved to dismiss on the same grounds. Judge Hedges recommended that this Court grant such motion.

Federal Rule of Civil Procedure 9(b) requires that when pleading fraud, "the circumstances constituting fraud ... shall be stated with particularity." A plaintiff is required to plead "the circumstances of the alleged fraud [with particularity] in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984). This requirement can be satisfied by "pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" Lum v. Bank of America, 361 F.3d 217, 224 (3d Cir. 2004) (quoting Seville Indus., 742 F.2d at 791). In addition, Plaintiffs must also "allege who made a misrepresentation to whom and the general content of the misrepresentation." Lum, 361 F.3d at 224 (citing Saporito v. Combustion Engineering Inc., 843 F.2d 666, 675 (3d Cir. 1988).

It is clear to the Court that Plaintiff has again failed to plead its claim of common law fraud with enough particularity to satisfy Federal Rule of Civil Procedure 9(b). The amended portions of Count One do not cure the deficiencies noted by the Court in response to Defendant's first motion to dismiss the Complaint. Although Plaintiff added the language "[o]n or after January 2003, in Tenafly, New Jersey" to Count One, and other general examples of allegedly fraudulent acts, this sole reference to date and place constitutes the height of the particularity employed by Plaintiff. (Compl. ¶ 133). The remainder of the allegations comprising Count One reference no other date, time, or place, other than Trinidad, the situs of Plaintiff's alleged marketing and sales efforts on behalf of Defendant. Further, the Court can discern no other effort by Plaintiff at "injecting precision and some measure of substantiation into their allegations of fraud." Lum, 361 F.3d at 224. To the Court, Count One appears to allege no more than breach of the April 2000 Contract, rather than a claim of fraud based on such a contract.[9] To the extent that Plaintiff alleges that it relied to its detriment on Defendant's assurances relating to a future arrangement, then the proper claim appears to be one for promissory estoppel, not fraud.[10]

---

[9]The Court notes that there is some confusion concerning Count One. Plaintiff, in its brief in opposition to Defendant's motion to dismiss, identifies the "1999 Contract" as the contract which forms the basis of Plaintiff's fraud claim, not any later, proposed contract. (Pl. Br. Opp'n Mot. to Dismiss at 6). Curiously, the Court is unaware of any such 1999 Contract. The record reflects that the contract between Plaintiff and Havas was dated September 8, 2000 and executed April 20, 2001. (April 2000 Contract, Frost Certification, Ex. C at 6). Even Plaintiff's own submissions do not contain a copy of any contract executed in 1999. (See Markowsky Certification). Despite this discrepancy, the Court will assume that Plaintiff refers to the April 2000 Contract when it refers to the "1999 Contract."

[10]Under New Jersey law, "[t]here are four elements to the doctrine of promissory estoppel: 1) a clear and definite promise; 2) made with the expectation that the promisee will rely upon it; 3) reasonable reliance upon the promise; 4) which results in definite and substantial detriment." Lobiondo v. O'Callaghan, 357 N.J. Super. 488, 499 (App. Div. 2003).

Plaintiff argues that the Court should deny Defendant's motion since "the discovery in this matter has had the effect of responding to the lack of specificity in the complaint cited by the Magistrate Judge in his Report and Recommendation." (Pl. Br. Obj. at 6). However, many of the facts which Plaintiff argues have been elicited during discovery that "fill in the blanks" and provide specifics regarding dates and communications between the parties were in the Plaintiff's control from the inception of this case. Defendant asserts that such facts were within the Plaintiff's control when it filed its first Complaint, when opposition was due to the Defendant's first motion to dismiss, and when opposition was due for the present motion. (Def. Br. Opp'n Obj. at 2). Plaintiff itself admits as much in its Brief objecting to the June 29, 2005 Report and Recommendation. After examination of the portions of the record which Plaintiff cites to in support of its common law fraud claim, the Court determines that only two of eleven cited portions involve facts and information exclusively within the control of the Defendant. (Pl. Br. Obj. at 1-4). It is thus clear to the Court that Plaintiff had knowledge of surrounding facts and circumstances sufficient to plead Count One with particularity in its Amended Complaint, yet failed to do so.

For the foregoing reasons, this Court will DISMISS Plaintiff's objection to Magistrate Judge Hedges June 29, 2005 Report and Recommendation, ADOPT the June 29, 2005 Report and Recommendation, GRANT Defendant's motion to dismiss Count One, and DISMISS Count One of the Complaint with prejudice.[11]

---

[11]The Court notes that Plaintiff asserts that Defendant's motion to dismiss should be denied and/or converted into a motion for summary judgment due to "[t]he injection of new and additional facts and details at this juncture." (Pl. Br. Obj. at 5). However, in accordance with this Court's previous determination that the majority of such "facts and details" were in the Plaintiff's control from the beginning of this action, conversion of Defendant's motion into one for

**B. Cross-Motions for Summary Judgment**

**1. Legal Standard**

Fed. R. Civ. P. 56(c) provides for summary judgment when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996). Alternately, summary judgment will be granted when the evidence on the record "is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The non-moving party cannot rest on mere allegations and must instead present actual evidence that establishes a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 256-57; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995); Sound Ship Bldg. Corp. v. Bethlehem Steel Co., 533 F.2d 96, 99 (3d Cir. 1976), cert. denied, 429 U.S. 860 (1976). In considering a motion for summary judgment, all evidence submitted must be viewed in the light most favorable to the party opposing the motion. Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 330 (3d Cir. 1995). However, even if the facts are undisputed, "summary judgment may not be granted ... if there is a disagreement over what inferences can be reasonably drawn from the facts." Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 744 (3d Cir. 1996) (quoting Nathanson v. Med.

---

summary judgment is unnecessary.

Coll. of Pa., 926 F.2d 1368, 1380 (3d Cir. 1991).

The issue before the Court is to determine whether any genuine issues of material fact exist and whether ETC or Curriculum are entitled to judgment as a matter of law.

**2. Count Ten**

Plaintiff sets forth a claim for breach of contract in Count Ten of the Complaint against Curriculum.[12] Curriculum moved for summary judgment on this claim and ETC filed a cross-motion for summary judgment.

Curriculum asserts that Plaintiff cannot sustain its breach of contract claim based on the April 2000 Contract because Plaintiff is unable to prove that the Contract created an exclusive arrangement between the parties which precluded Defendant from dealing directly with C&C. Defendant contests that since the April 2000 Contract clearly stated that the Contract is a fully integrated, non-exclusive agreement, it is entitled to summary judgment on this claim. Plaintiff however, alleges that two "sole source exclusivity letters" were exchanged between Plaintiff and Defendant which allegedly changed the nature of the Contract from non-exclusive to exclusive. Defendant however, argues that even if such letters exist, they may not be considered since such evidence is inadmissible as barred by the parol evidence rule and barred by the statute of frauds. Defendant also notes that Plaintiff has been unable to produce any such letter and argues that even if such letters *did* exist, they would not confer any rights upon the Plaintiff nor bind Defendant.

---

[12]Defendant filed a motion for a more definite statement with respect to Count Ten pursuant to Federal Rule of Civil Procedure 12(e) which was denied by this Court on January 18, 2005.

In Defendant's Local Civil Rule 56.1 Statement of Facts, Defendant states that "Exhibit 6 accurately represents the written terms of ETC's contractual relationship with Curriculum." (Def. Stmt. of Facts ¶ 8). In Plaintiff's brief, Plaintiff states that it "does not dispute the facts set forth by the defendant in its twenty paragraph Statement of Material Facts." (Pl. Br. Summ. J. at 16). "Exhibit 6" refers to Exhibit 6 to the deposition of Markowsky taken on June 29, 2005, which was a copy of the April 2000 Contract, and any subsequent amendments or assignments thereto. Thus, by its own admission, Plaintiff admits that the express terms of the April 2000 Contract are binding, including the explicit characterization of the agreement as non-exclusive.[13]

Plaintiff argues that Defendant's motion for summary judgment should be denied since Defendant violated its duty of good faith and fair dealing and because Plaintiff is entitled to the benefit of the bargain. Further, Plaintiff argues that it is entitled to summary judgment on Count Ten in the amount of $1,159,166.60 for Defendant's breach of contract.

Curiously, Plaintiff admits that "the defendant has not technically breached any of the express provisions of the contract and its amendments entered into by the parties." (Pl. Br. Moving/Opp'n Summ. J. at 18). However, Plaintiff does allege that Defendant has "blatantly and repeatedly breached the implied duty of good faith and fair dealing present in all contracts." (Pl. Br. Moving/Opp'n Summ. J. at 18). Plaintiff insists that whether or not the April 2000 Contract created an exclusive relationship is irrelevant because Plaintiff simply "did not receive the

---

[13]As previously stated, the April 2000 Contract specifically states that "[t]his letter ... when executed by both of our companies will constitute a *non-exclusive agreement* ("Agreement") that grants [ETC] the rights to sell such product bundles (the "Bundles") listed in Exhibit A only in the educational market in (the "Territory") and only in the educational market (the "Channel") in the following countries and territories: Bermuda, the Bahamas, and Caribbean Nations." (April 2000 Contract, Frost Certification, Ex. C at 1).

benefit of its hard work and excellent contacts in the Caribbean, without which the defendant could initially sell nothing." (Pl. Br. Moving/Opp'n Summ. J. at 20). In support, Plaintiff refers the Court to several New Jersey cases which purportedly deal with such an issue.

However, upon review of the submissions of the parties and relevant case-law, this Court determines that Plaintiff is unable to successfully demonstrate that Defendant breached the April 2000 Contract entered into with Plaintiff. In fact, Plaintiff admits as much in its own moving papers. In its submissions to the Court, Plaintiff attempts to re-fashion its breach of contract claim, one for monetary damages, into a claim for equitable relief. Plaintiff appears to intertwine the causes of action for breach of contract and for breach of the covenant of good faith and fair dealing.[14] There is no such claim present in this case now, or ever, and the New Jersey Supreme Court has noted that "[a] breach of the implied covenant of good faith and fair dealing differs from a 'literal violation of a contract.'"[15] Wade v. Kessler, 172 N.J. 327, 340-41 (2002) (quoting Bak-A-Lum, 69 N.J. at 130). Since Plaintiff has admitted that Defendant has not "technically breached" the April 2000 Contract there is thus no genuine issue of material fact in dispute with respect to these allegations.

---

[14]In Bak-A-Lum Corp. of America v. Alcoa Bldg. Products, Inc., 69 N.J. 123 (1976), the New Jersey Supreme Court noted that evidence relating to a party's alleged breach of the covenant of good faith and fair dealing could mitigate damages. In this case, however, Plaintiff does not make the argument that Defendant's alleged breach of this covenant should mitigate any damages due to Defendant on its Counterclaim.

[15]The only allegation in the Complaint which conceivably relates to a potential claim for breach of good faith and fair dealing is found in paragraph 134 of the Complaint. This paragraph, incorporated into Plaintiff's claim for fraud, states: "ETC continued its sales efforts on behalf of Curriculum, based on its belief that Curriculum was acting in good faith. Unfortunately, this reliance upon Curriculum's good faith was misplaced." (Compl. ¶ 134). This is the only reference to Defendant's good, or bad, faith, but the Court will not construe such as a separate claim for breach of the implied covenant of good faith and fair dealing.

Plaintiff insists that since ETC was acting as the "broker" for Defendant's software, it is entitled to its "commission" for the software order placed by the country of Trinidad. (Pl. Br. Moving/Opp'n Summ. J. at 22). Plaintiff asserts that "[e]ven if [Defendant] had the right to utilize other companies to make other sales, the defendant did not have the right to cut ETC out of the Trinidad Sale." (Pl. Br. Moving/Opp'n Summ. J. at 22). Plaintiff argues that it is still due the profit earned by Defendant when it entered into its business transaction directly with C&C. (Pl. Br. Moving/Opp'n Summ. J. at 22). This argument of the Plaintiff clearly fails. After a thorough review of the April 2000 Contract, the Court is unable to find any term which grants Plaintiff an exclusive right to distribute Defendant's software in the Caribbean. Rather, the terms of the Contract appear to limit *Plaintiff*, placing geographical restrictions on its right to market Defendant's software. The Contract imposes few apparent limits on Defendant. The April 2000 Contract explicitly grants Plaintiff the right to sell Defendant's software, but restricts such sales only to educational markets in Caribbean nations. (April 2000 Contract, Frost Certification, Ex. C). The April 2000 Contract goes on to state that "[Plaintiff] understands and agrees that sales of the [software] outside [Caribbean nations] shall be considered a material breach of this Agreement." (April 2000 Contract, Frost Certification Ex. C). The express terms of the April 2000 Contract do not restrict Defendant from entering into sales agreements with third parties for the same software, do not reference any exclusive distribution relationship between Plaintiff and Defendant, and Plaintiff has not demonstrated otherwise.

Since Plaintiff has failed to point to any genuine issue of material fact with respect to its breach of contract claim, the Court will GRANT summary judgment for Defendant on Count Ten of Plaintiff's Complaint and DENY Plaintiff's cross-motion for summary judgment on Count

Ten. Count Ten of the Complaint is DISMISSED with prejudice as alleged against Curriculum.

**3. Defendant's Counterclaim**

Defendant's Counterclaim sets forth counterclaims for breach of contract, unjust enrichment, account stated, and goods sold and delivered. Defendant asserts that all facts relating to its Counterclaim are undisputed and thus, it is entitled to summary judgment. Defendant alleges that the relevant facts "boil down to the following: (1) ETC placed an order for software; (2) Curriculum delivered the software; (3) ETC failed to pay Curriculum for the software." (Def. Br. Summ. J. at 15).

The following facts are undisputed: on May 15, 2003, ETC ordered software products from Curriculum. That same day, Curriculum shipped the products and issued an invoice to ETC in the amount of $125,000.[16] According to the April 2000 Contract, payment was due to Curriculum within sixty (60) days from the date of the invoice. (April 2000 Contract, Frost Certification, Ex. C at ¶ 2). ETC admits that it was invoiced for the software and that it failed to pay Curriculum. (Markowsky Dep. 160:10 - 162:1, June 29, 2005). ETC admits that it received the products and still has them in its warehouse. (Markowsky Dep. 161:15-23, June 29, 2005). Curriculum requests this Court to enter summary judgment on its Counterclaim in the amount of $125,000 plus accrued interest.[17]

---

[16]This amount reflects ten (10) software licenses at the negotiated price of $12,500 per license. (Markowsky Dep. 160:14-20, June 29, 2005).

[17]Pursuant to the April 2000 Contract, failure to pay an amount when due will result in accrual of interest at a rate of one and one-quarter percent (1.25%) per month from its due date until paid. (Frost Certification, Ex. C at ¶ 2.1).

Plaintiff opposes Defendant's motion for summary judgment on its Counterclaim and in doing so, relies on "the reasons set forth in Point I of this brief" which relate to Defendant's alleged breach of the covenant of good faith and fair dealing. (Pl. Br. Moving/Opp'n Summ. J. at 24). Defendant also relies upon on the doctrine of impossibility as a defense to Defendant's Counterclaim.

Plaintiff asserts that Defendant's contract with C&C for the sale and distribution of software to the country of Trinidad rendered Plaintiff's performance on the outstanding $125,000 impossible. Plaintiff characterizes C&C's decision to order the product directly from Curriculum instead of through Plaintiff as an "unexpected event" and "not a risk which was allocated or assumed by any of the parties." (Pl. Br. Moving/Opp'n Summ. J. at 25). Plaintiff defends its non-payment on the basis that without its expected funds from C&C, its payment to Defendant was rendered impossible. Plaintiff argues that it should be discharged from this obligation under the April 2000 Contract.[18]

The April 2000 Contract provides that all payments to ETC must be paid within sixty (60) days of Curriculum's invoice. Any late payment shall accrue interest until paid, and "shall constitute sufficient cause for [Curriculum] to terminate this Agreement." (April 2000 Contract ¶ 2.1, Frost Certification, Ex. C). The Contract also provides that upon the effective date of any termination of the agreement, ETC shall remain liable for its obligation to Defendant to pay for any software bundles ordered and received. (Id. at ¶ 7.1). There is no condition precedent in the

[18]Defendant correctly notes that ETC never filed an Answer to Defendant's Counterclaim, and thus has not raised impossibility as an affirmative defense before this stage of the litigation. For this reason alone, the Court could deem this defense waived and grant Defendant summary judgment on its Counterclaim.

Contract that ETC's payment to Defendant is contingent upon payment from some third party.

"Impossibility or impracticability of performance are complete defenses where a fact essential to performance is assumed by the parties but does not exist at the time for performance. They are not defenses where the difficulty is the personal inability of the promisor to perform." Connell v. Parlavecchio, 255 N.J.Super. 45, 49-50 (N.J. Super A.D. 1992) (citations omitted). The impossibility of the promisor's performance must be *objective* impossibility, not merely subjective impossibility. Duff v. Trenton Beverage Co., 4 N.J. 595, 606 (N.J. 1950). Here, Plaintiff argues that performance on its obligation to remit payment to Defendant was rendered impossible because C&C began to order directly from Curriculum and ETC did not receive any funds from C&C. Plaintiff's proffered facts do not meet the objectivity requirement for impossibility of performance nor create a genuine issue of material fact with respect to objectivity. Plaintiff entered into a non-exclusive contract with Defendant which did not bind nor reference C&C, nor preclude Defendant from pursuing other business deals. It is established that Plaintiff ordered licenses from Defendant and failed to pay Defendant within sixty (60) days. (See Markowsky Dep., supra). Plaintiff did not return the licenses or otherwise attempt to negotiate a new contract with Defendant. (Id.). In this respect, it is clear to the Court that Plaintiff's breach was due entirely to Plaintiff's "personal inability ... to perform" rather than some intervening event. Connell, 255 N.J. Super. at 50. For these reasons, the Court grants summary judgment to Defendant on Plaintiff's defense of impossibility of performance.

In Plaintiff's combined cross-motion and opposition brief, Plaintiff opposes Defendant's motion for summary judgment on the Counterclaim "for all the reasons set forth in Point I of this brief." (Pl. Br. Moving/Opp'n Summ. J. at 24). Point I of Plaintiff's brief argues that "(1) the

defendant violated its duty of good faith and fair dealing in performing the contract between the parties, and (2) by its conduct the defendant deprived the plaintiff of the benefit of its bargain under the contract." (Pl. Br. Moving/Opp'n Summ. J. at 14). Nowhere in its submissions to the Court has Plaintiff countenanced how such an argument constitutes a defense to liability or creates a genuine issue of material fact with respect to Defendant's Counterclaim. Thus, the Court will disregard such arguments.

For the foregoing reasons, the Court determines that Plaintiff has not shown that any genuine issue of material fact exists with respect to Defendant's Counterclaim or any defense thereto. Defendant's motion for summary judgment on its Counterclaim is hereby GRANTED.

## CONCLUSION

For the foregoing reasons, this Court hereby ADOPTS the June 29, 2005 Report and Recommendation of the Honorable Magistrate Judge Ronald J. Hedges, DISMISSES Plaintiff's objections thereto, GRANTS Defendant's motion to dismiss Count One of the Complaint, GRANTS Defendant's motion for summary judgment on Count Ten of the Complaint and on Defendant's Counterclaim, and DENIES Plaintiff's cross-motion for summary judgment on Count Ten.

DATED: June 13, 2006

/s/ Jose L. Linares
United States District Judge